# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

MIGUELINA S.,[1]                               )
                                           )
   Plaintiff,                   )
                                           )
   v.                            )  Civil No. 3:19-cv-465–HEH
                                           )
ANDREW M. SAUL,[2]                             )
Commissioner of Social Security,               )
                                           )
   Defendant.                    )
                                           )

## MEMORANDUM OPINION
### (Cross-Motions for Summary Judgment)

On November 19, 2015, Miguelina S. ("Plaintiff") applied for Social Security

Disability Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social

Security Act ("Act"), alleging disability from degenerative joint disease of her left knee

and degenerative disc disease of her lumbar spine, with an alleged onset date of August

14, 2015.  The Social Security Administration ("SSA") denied Plaintiff's claims on

March 9, 2016.  Thereafter, an Administrative Law Judge ("ALJ") held a hearing on

April 18, 2018, and denied Plaintiff's claims in a written decision on June 19, 2018,

concluding that Plaintiff did not qualify as disabled under the Act because Plaintiff is able

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to the significant privacy concerns in social security cases, federal courts should refer to claimants by only their first names and last initials.

[2] On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six (6) year term as the Commissioner of Social Security.  Accordingly, Commissioner Saul will be named as the defendant in this matter.

to perform her past work as a molding machine operator and is capable of making a

successful adjustment to other work that exists in significant numbers in the national

economy. The Appeals Council denied Plaintiff's request for review on April 25, 2019,

rendering the ALJ's decision the final decision of the Commissioner subject to review by

this Court.[3]

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C.

§ 405(g), arguing that the ALJ erred in (1) assigning non-controlling weight to the

opinions of Plaintiff's treating physicians, Edward M. Yambo, M.D., and Jeff Lawrence,

PA-C; (2) failing to properly evaluate Plaintiff's subjective complaints; and (3) failing to

conduct a function-by-function analysis in determining Plaintiff's residual functional

capacity ("RFC"). (Pl.'s Mem. Supp. Mot. Summ. J. [hereinafter Pl.'s Mem.] at 8–21,

ECF No. 16.) This matter now comes before the Court on the parties' cross-motions for

summary judgment, rendering the matter ripe for review.[4] For the reasons that follow,

Plaintiff's Motion for Summary Judgment will be denied (ECF No. 14), Defendant's

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

[4] Plaintiff also filed a Motion to Remand on October 2, 2019 (ECF No. 15). Because the Motion to Remand is substantively duplicative of Plaintiff's Motion for Summary Judgment, the Court will address only the merits of the cross-motions for Summary Judgment and will accordingly deny as moot Plaintiff's Motion to Remand. The Court will dispense with oral argument because the facts and legal contentions are fully developed, and argument would not aid this Court in its decisional process. *See* E.D. Va. Local Civ. R. 7(J).

Motion for Summary Judgment will be granted (ECF No. 17), and the final decision of the Commissioner will be affirmed.

## I. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (unpublished) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court

3

must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination, or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634–35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines

whether the claimant can perform any work existing in the national economy.
§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II.   THE ALJ'S DECISION

On April 18, 2018, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (R. at 100–24.) On June 19, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 84–95.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 84–95.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 14, 2015, which was Plaintiff's alleged onset date. (R. at 87.) At step two, the ALJ found that Plaintiff suffered from degenerative joint disease of the left knee and degenerative disc disease of the lumbar spine. (R. at 87.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 88.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work, except she could frequently balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. (R. at 89.) The ALJ further found that Plaintiff was able to drive, prepare meals, wash dishes, vacuum, and grocery shop with assistance, but that she could not mop and spends most of her day lying down. (R. at 89.) At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a molding machine operator. (R. at 92, 94.) At step five, the ALJ determined that Plaintiff

is capable of making a successful adjustment to other jobs existing in significant numbers

in the national economy, such as a parking lot attendant and a cleaner. (R. at 94.)

Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 95.)

## III.   ANALYSIS

### A. The ALJ provided sufficient reasons for affording Dr. Yambo's and PA-C Lawrence's opinions little weight.

Plaintiff argues that the ALJ erred in discounting Dr. Yambo's and PA-C

Lawrence's opinions. (Pl.'s Mem. at 8–14.) Specifically, Plaintiff argues that, had the

ALJ conducted a proper evaluation of the treating and examining source opinions, the

ALJ would have found greater limitations, which would have precluded the performance

of substantial gainful activity. (*Id.* at 14.) Defendant responds that the ALJ reasonably

assigned the opinions little weight and that substantial evidence supports the ALJ's

evaluation of the medical and other evidence, supporting his non-disability finding.

(Def.'s Mem. Supp. Mot. Summ. J. [hereinafter Def.'s Mem.] at 21–22, ECF No. 18.)

During the sequential analysis, when the ALJ determines whether the claimant has

a medically-determinable severe impairment that would significantly limit the claimant's

physical or mental ability to do basic work activities, the ALJ must analyze the

claimant's medical records that are provided and any medical evidence resulting from

consultative examinations or medical expert evaluations that have been ordered.

§§ 404.1512, 404.1527, 416.912, 416.927. When the record contains multiple medical

opinions, including those from Plaintiff's treating sources, consultative examiners, or

other sources that are consistent with each other, then the ALJ makes a determination

based on that evidence.  §§ 404.1527(c), 416.927(c).  If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 404.1527(c)(2)–(6), (d), 416.927(c)(2)–(6), (d).

Under the regulations, only an "acceptable medical source" may be considered a treating source that offers an opinion entitled to controlling weight.  SSR 06-3p.[5] Acceptable medical sources include licensed physicians, licensed or certified psychologists, and certain other specialists, depending on the claimed disability. §§ 404.1513(a), 404.1527(a), 416.913(a), 416.927(a).  The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants, or therapists.  SSR 06-03p; §§ 404.1527(f), 416.927(f).[6]

Under the applicable regulations and case law, a treating source's opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th

---

[5] Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p, instead incorporating some of the Rulings' policies into 20 C.F.R. §§ 404.1527(f), 416.927(f). 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017).  Plaintiff filed her claims on November 19, 2015, prior to this regulation taking effect.  (R. at 225.)  The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting retroactive rulemaking power).  Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claim.

[6] The regulations detail that "other sources" include medical sources that are not considered "acceptable medical sources" under 20 C.F.R. §§ 404.1527(f) and 416.927(f).  The given examples are a non-exhaustive list.  SSR 06-03p.

Cir. 2017); *Craig*, 76 F.3d at 590; SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), when the treating source's opinion is inconsistent with other evidence, or when it is not otherwise well-supported. §§ 404.1527(c)(3)–(4), (d), 416.927(c)(3)–(4), (d); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."); *see also Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Id.* In making her explanation, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any

8

specialization on the part of the treating source; and (6) any other relevant factors. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ—not the treating source—with the authority to determine whether a claimant is disabled as that term is defined under the Act. §§ 404.1527(d)(1), 416.927(d)(1). Although the regulations explicitly apply these enumerated factors only to treating sources, those same factors may be applied in evaluating opinion evidence from "other sources." SSR 06-03p.

On January 12, 2016, Plaintiff presented to her primary care physician, Dr. Yambo, to establish treatment for back pain and knee pain. (R. at 497–501.) At Plaintiff's January 21, 2016 appointment, PA-C Lawrence completed a "Disability Impairment Questionnaire" on behalf of Dr. Yambo. (R. at 389–93.) PA-C Lawrence indicated that Plaintiff suffered from constant, sharp pain and that her ongoing impairments were expected to last at least twelve months (R. at 389–90.) PA-C Lawrence further indicated that Plaintiff was to begin physical therapy on January 27, 2016. (R. at 390.) Finally, PA-C Lawrence reported that Plaintiff could perform a job while seated for one hour and/or while standing for two hours in an eight-hour workday, must avoid continuous sitting during an eight-hour workday, could not lift more than ten pounds, and was likely to be absent from work as a result of her impairments more than three times per month. (R. at 391, 393.)

Dr. Yambo completed another physical examination of Plaintiff on July 15, 2016, in which he indicated she was still suffering from back pain and left knee pain. (R. at 510.) Dr. Yambo noted that Plaintiff's pain "radiate[d] down [the] back of [her] leg to

[her] foot." (R. at 510.) Dr. Yambo further indicated that, although Plaintiff had begun physical therapy, she left to go to the Dominican Republic and had just returned. (R. at 510.) Dr. Yambo indicated that Plaintiff denied any swelling, decreased range of motion, fever, chills, or other symptoms. (R. at 510.) Dr. Yambo refilled Plaintiff's prescriptions and advised Plaintiff to continue physical therapy. (R. at 511.)

Plaintiff saw Dr. Yambo again on January 5, 2017, and Dr. Yambo reported Plaintiff was receiving some relief from Flexeril. (R. at 514.) As a result, Dr. Yambo prescribed Mobic and encouraged physical therapy. (R. at 515.) On January 30, 2017, Dr. Yambo completed a second "Disability Impairment Questionnaire," indicating that Plaintiff suffered from daily, sharp pain, could perform a job while seated for 3 hours and/or while standing for 3 hours in an 8 hour workday, must avoid continuous sitting during an 8 hour workday, could not lift more than 10 pounds, and was likely to be absent from work as a result of her impairments more than three 3 times per month. (R. at 523–24, 526.)

The ALJ assigned Dr. Yambo's and PA-C Lawrence's medical opinions little weight, reasoning that Dr. Yambo's and PA-C Lawrence's opinions are "inconsistent with the medical evidence." (R. at 91.) The ALJ also noted that PA-C Lawrence is not an acceptable medical source but that he nevertheless considered his opinion. (R. at 91.) The ALJ's explanations are legally sufficient, and the ALJ did not err in discounting Dr. Yambo's and PA-C Lawrence's treating opinions.

The law requires that the ALJ's assignment of weight be sufficiently specific "to make clear to any subsequent reviewers the weight the adjudicator gave to the . . .

10

source's medical opinion and the reasons for that weight." SSR 96-2p (discussing

affording weight to the treating physician); *see Gordon v. Schweiker*, 725 F.2d 231, 235

(4th Cir. 1984) (citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980); *Strawls v.*

*Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979); *Arnold v. Sec'y of Health Educ. &*

*Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). In this case, as mentioned, the ALJ stated

that Dr. Yambo's and PA-C Lawrence's opinions deserved limited weight because they

were inconsistent with the medical evidence. (R. at 91.) The ALJ's conclusion followed

a thorough discussion of both Dr. Yambo's and PA-C Lawrence's examinations. (R. at

91–92.) Therefore, the ALJ's explanations build the logical bridge necessary for this

Court to perform a meaningful review. *See Monroe*, 826 F.3d at 189.

Substantial evidence also supports the ALJ's assignment of limited weight to Dr.

Yambo's and PA-C Lawrence's opinions. The weight of the objective evidence reflects

that Plaintiff is capable of performing a limited range of light work. (R. at 89–92.) As

mentioned by the ALJ, Plaintiff is able to care for herself—preparing meals, doing light

chores, driving, and traveling. (R. at 90, 435–41, 442–45.) The ALJ found that

Plaintiff's ability to maintain such a routine and schedule belie opinions that her

concentration and attention are greatly affected. (R. at 91.)

In addition, Plaintiff's treatment plans routinely involved prescription and over the

counter medications, steroid injections, as well as physical therapy, all of which

constitute conservative treatment measures. (R. at 89–92.) Furthermore, no provider

ever advised Plaintiff to seek more aggressive treatment. (R. at 380–84, 450–96, 497–

521, 527.) Generally, Plaintiff's evaluations were "largely normal, with Plaintiff

typically failing to display diminished strength, sensation, or reflexes in any area, and clinicians declining to describe significant abnormalities in [Plaintiff's] gait." (R. at 90, 381, 383, 435–41, 451–53, 459, 464, 486, 495, 511, 515, 517, 520.) If a claimant requires only conservative treatment, an ALJ is reasonable in holding that the alleged disability lacks the seriousness that the claimant alleges. *Dunn*, 607 F. App'x at 274–75. Thus, given Plaintiff's conservative course of treatment, the ALJ could reasonably infer that Plaintiff's impairments were not as severe as either she or Dr. Yambo and PA-C Lawrence endorsed. *See id.*

When taken as a whole, Plaintiff's treatment record is consistent with the less restrictive findings that the ALJ described in her RFC, permitting Plaintiff to perform light work. This Court reminds Plaintiff that "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id.* at 274. Substantial evidence in Plaintiff's treatment record therefore supports the ALJ's assignment of limited weight to Dr. Yambo's and PA-C Lawrence's opinions.

In sum, the ALJ provided sufficient explanations for discounting Dr. Yambo's and PA-C Lawrence's treating opinions. Accordingly, the Court finds that the ALJ did not err in discounting Dr. Yambo's and PA-C Lawrence's opinions.

**B. The ALJ provided sufficient reasons for affording Plaintiff's subjective complaints little weight.**

Plaintiff argues that the ALJ erred in failing to properly evaluate Plaintiff's subjective complaints. (Pl.'s Mem. at 14–18.) Specifically, Plaintiff argues that she

"'was entitled to rely exclusively on subjective evidence' to prove that her 'pain [was] so continuous and/or severe that it prevent[ed her] from working a full eight hour day." (*Id.* at 16 (quoting *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)).) Defendant responds that the ALJ's rationale for his evaluation of Plaintiff's subjective complaints is explained and supported by substantial evidence. (Def.'s Mem. at 22–25.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's consistent complaints. As of March 28, 2016, the ALJ must follow a revised two-step analysis in reviewing a claimant's subjective complaints. 20 C.F.R. §§ 404.1529(a); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (correcting terminology relating to applicable date); SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date to March 28, 2016). The first step requires the ALJ to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. SSR 16-3p, 2016 WL 1119029, at *3. If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's "symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work related activities." *Id.* at *4. The ALJ's step-two evaluation must first consider the

13

consistency between a claimant's statements and the objective medical evidence. *Id.* at \*5. Unless the ALJ can determine that a claimant qualifies as disabled based solely on objective medical evidence, the ALJ must also consider other sources of evidence to determine consistency, including "statements from the [claimant], medical sources, and other sources that might have information about the [claimant's] symptoms." *Id.* at \*5–7. Based on the degree of consistency between a claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. *Id.* at \*8.

Furthermore, it is well-established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence of record. (R. at 89–90.) Accordingly, the ALJ found that Plaintiff's alleged impairments "do cause some symptoms," but the "symptoms are not as severe or as limiting as she claims." (R. at 90.) Before conducting the *Craig* analysis, the ALJ outlined Plaintiff's subjective complaints, including that her lower back and knee pain prevents her from maintaining full-time

14

employment. (R. at 89, 111.) The ALJ also acknowledged Plaintiff's statements that she can lift only ten to twenty pounds—for short periods of time—and must lie down much of the day. (R. at 89, 112.) Plaintiff admitted, however, that she is able to care for her personal needs in most respects, is able to go up and down stairs, and can stand and walk for one hour. (R. at 89, 111–12.)

The ALJ found the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. at 89–90.) In support of this finding, the ALJ observed that, although Plaintiff's impairments do cause some symptoms, no provider had advised her to seek more aggressive treatment to manage her symptoms. (R. at 90, 380–84, 450–496, 497–521, 527.) The ALJ also found that her ability to perform such a variety of daily tasks—including caring for her personal needs in most respects, preparing meals, completing chores, driving, and traveling to and from the Dominican Republic—suggested her symptoms were not as severe as Plaintiff claimed. (R. at 90, 112–13, 254–61, 435–41, 442–45.)

After reciting the objective medical evidence and subjective statements, as well as assessing the medical opinions, the ALJ concluded that Plaintiff typically exhibited a gait free of significant abnormalities and failed to demonstrate diminished strength, sensation, or reflexes in any area despite some "tenderness and a limited range of motion in her left knee and lumbar region at times." (R. at 90, 381, 383, 451–53, 459, 464, 486, 495, 511, 515, 517, 520.) Consequently, the ALJ found that the light exertional level properly accounted for Plaintiff's knee- and back-related limitations. (R. at 92.)

15

The Court finds the ALJ's analysis of Plaintiff's subjective complaints of pain legally sufficient because the ALJ relied on the objective medical evidence, subjective statements, and medical opinions to discredit the intensity, persistence, and limiting effects of Plaintiff's pain. The ALJ not only provided a narrative explanation of Plaintiff's medical records and relied on those records to show that Plaintiff could perform light work, (*see* R. at 90 (relying on Plaintiff's gait and strength to discredit the . severity and limiting effects of Plaintiff's knee and back pain)), but also considered whether other evidence in the record supported or undermined Plaintiff's complaints of pain, *see* § 404.1529(c)(3)(i)-(vii) (listing other types of evidence that the Commissioner should consider when analyzing a claimant's subjective complaints, including: activities of daily living; location, duration, frequency and intensity of the pain; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medications; other treatments received; other measures used to alleviate symptoms; and, other relevant factors). The ALJ discussed Plaintiff's testimony about driving to Wal-Mart and the grocery store, as well as cooking and vacuuming, and her travel to and from the Dominican Republic, and the ALJ contrasted these statements with Plaintiff's complaints that she was unable to maintain work or complete many routine daily tasks. (R. at 90, 112–13, 254–61, 435–41, 442–45.)

Furthermore, the ALJ outlined inconsistencies between Plaintiff's statements and the objective medical evidence. (R. at 90.) Although Plaintiff has received treatment for her impairments, the ALJ explained that her care has been conservative, consisting of medications, steroid injections, and physical therapy. (R. at 90, 450–496.) As

mentioned, the ALJ further detailed that "no provider has advised her to seek more aggressive treatment to help manage her symptoms." (R. at 90, 380–84, 450–496, 497–521, 527.) Based on this evidence and other evidence of record, the ALJ concluded that Plaintiff lacked sufficient support for her statements regarding her inability to complete many routine tasks. (R. at 90.)

Ultimately, the ALJ provided a detailed, narrative explanation of the inconsistencies between Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms and the evidence of record. Importantly, the ALJ cited to evidence in the record and fairly considered contrary findings, explaining why the overall record favored his conclusions. The Court's own review of the record finds substantial evidence to support the ALJ's reasoning. Accordingly, the ALJ did not err in affording Plaintiff's subjective complaints little weight.

## C. The ALJ did not err by failing to conduct a narrative discussion explaining how the evidence supports each of his functional capacity conclusions on a function-by-function basis.

Plaintiff argues that the ALJ erred in failing to conduct a function-by-function analysis in determining Plaintiff's RFC. (Pl.'s Mem. at 18–21.) Specifically, Plaintiff contends that the ALJ should have conducted a narrative discussion, explaining how the evidence supports each of his conclusions about Plaintiff's RFC. (*Id.* at 21.) Defendant responds that substantial evidence supports the ALJ's RFC assessment. (Def.'s Mem. at 25–28.)

As previously mentioned, after step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine

the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). In analyzing a claimant's abilities, an ALJ must first assess the nature and extent of the claimant's physical and mental limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. § 404.1545(b). Generally, the claimant bears the responsibility to provide the evidence that the ALJ utilizes in making his RFC determination; however, before making a determination that a claimant is not disabled, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. § 404.1545(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments that are based on the claimant's credible complaints. *Carter v. Astrue*, No. 3:10CV510, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* §§ 404.1545(e), 416.945(e).

The ALJ must conduct a function-by-function analysis in assessing a claimant's RFC. *Mascio*, 780 F.3d at 635–36. Only after the function-by-function analysis can the ALJ express the claimant's RFC in terms of the exertional levels of work—sedentary, light, medium, heavy and very heavy. *Id.* at 636 (citing SSR 96-8p). The assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts and non-medical evidence, including daily activities and observations. SSR 96-8p.

In *Mascio*, the Fourth Circuit declined to adopt a *per se* rule requiring remand when the ALJ failed to perform an explicit function-by-function analysis. *Mascio*, 780 F.3d at 636. Indeed, in light of *Mascio*, multiple district courts have found that, in the

absence of an explicit function-by-function analysis, the reviewing court must assess whether the ALJ's RFC analysis considered the relevant function, whether his decision provides a sufficient basis to review his conclusions and, ultimately, whether that decision is supported by substantial evidence in the record." *Ashby v. Colvin*, No. 2:14-674, 2015 WL 1481625, at *3 (S.D.W. Va. Mar. 31, 2015) (holding that the ALJ did not conduct explicit function-by-function analysis of claimant's physical abilities, but sufficient evidence existed showing that the ALJ analyzed the relevant function); *see also Scruggs v. Colvin*, No. 3:14-cv-00466–MOC, 2015 WL 2250890, at *4 (W.D.N.C. May 13, 2015) (requiring remand because the ALJ's decision did not address claimant's ability to complete tasks for a full workday); *Carver v. Colvin*, No. 1:13CV13, 2015 WL 4077466, at *10 (M.D.N.C. July 6, 2015) (recommending remand because the ALJ neglected to assess claimant's ability to walk or stand for a full workday).

However, the Fourth Circuit held in *Mascio* that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636. The Fourth Circuit remanded in *Masico*, because the ALJ's opinion did not contain the analysis needed for a meaningful review. *Id.* at 636–37. In particular, the Fourth Circuit pointed out that the ALJ did not discuss the claimant's ability to perform certain functions for a full workday. *Id.* at 637. This lack of explanation was especially troubling given that the record contained conflicting evidence as to the claimant's RFC. *Id.* The Fourth Circuit ordered a remand, because it "[was] left to guess about how the ALJ arrived at her conclusion on Mascio's ability to

19

perform relevant functions and indeed, remain uncertain as to what the ALJ intended."
*Id.*

Here, the ALJ stated that Plaintiff had the RFC to perform light work, as
mentioned above. (R. at 89.) Specifically, the ALJ explained that "the pain and other
symptoms associated with [Plaintiff's] knee impairment limited her to work at the light
exertional level and affect her ability to perform postural tasks." (R. at 90.) The ALJ
further noted that Plaintiff's lower back pain contributes to her postural and exertional
limitations. (R. at 90.) However, the ALJ refuted the degree of limitation and severity
alleged by Plaintiff, finding that Plaintiff was not as limited as she claimed. (R. at 90.)

To support this conclusion, the ALJ relied on objective medical records showing
that Plaintiff's examinations largely revealed normal strength, sensation, and reflexes, as
well as a normal gait. (R. at 90.) The ALJ cited to medical evaluations that "suggest[]
that she should be able to stand and walk six hours in an eight-hour workday and sit six
or more hours in an eight-hour workday." (R. at 91.) The ALJ further cited to a
disability impairment questionnaire completed by one of Plaintiff's treating physicians,
which indicated Plaintiff could sit for one hour in an eight-hour workday, stand and walk
for two hours, lift and carry ten pounds occasionally and five pounds frequently, and can
frequently use her hands and fingers for fine manipulation, as well as grasp, turn, and
twist objects. (R. at 91.) The ALJ also noted that the record does not indicate that

Plaintiff has any manipulative limitations.[7] (R. at 91–92.)  Finally, the ALJ explained

that another treating physician's opinion supported a finding that Plaintiff had the RFC to

perform light work because he determined that Plaintiff "has moderate limitations in

squatting, kneeling, walking, and standing for a long period of time due to her left knee

pain, but she has no limitations in bending, lifting, carrying, or pushing." (R. at 92.)

The ALJ's explanation and corresponding restrictions in the RFC fit squarely

within the parameters of *Mascio*.  Unlike the ALJ in *Mascio*, the ALJ here addressed why

Plaintiff's pain and symptoms did not cause more disabling limitations, citing to specific

evidence in the record to support his conclusions. (R. at 90–92); 780 F.3d at 637–38.  The

ALJ addressed why Plaintiff's impairments—her lower back pain and left knee pain—

resulted in a finding that she could perform light work, despite the fact that Plaintiff does

have "severe physical impairments that do cause some exertional and postural

limitations," which provided a logical bridge between evidence of record and Plaintiff's

RFC. (R. at 89–92.)  From the ALJ's explanation, the Court can garner that, in the ALJ's

estimation, Plaintiff's severe physical impairments still permitted her to perform light

work, which allows for meaningful review. (R. at 25.)  Thus, the ALJ did not err as a

matter of law.

Moreover, substantial evidence supports the ALJ's findings. (R. at 89–92.)  The

ALJ found that Plaintiff's subjective complaints held water, explaining that her pain

---

[7] Furthermore, the ALJ considered this physician's opinion despite the fact that the physician is a
"physician's assistant" and "not an acceptable medical source," further demonstrating how
thorough the ALJ's review was of the record evidence. (R. at 91.)

"likely prevents her from performing heavy work activities." (R. at 91.) However, the ALJ further explained that, as Plaintiff "typically demonstrates good strength in all areas, . . . she is capable of performing the lifting and carrying required for light work." (R. at 91, 112, 119, 435–36.) Plaintiff's own testimony further exhibited her capacity to perform light tasks, such as showering, preparing meals, driving, grocery shopping, traveling to the Dominican Republic, and completing household chores. (R. at 91, 113–14.) The ALJ noted that "these activities all require her to attain a variety of postures, suggesting that she should be able to climb, balance, stoop, kneel, crouch, and crawl at least frequently." (R. at 91.) The objective medical evidence also indicated that Plaintiff was able to maintain attention and concentration, as Plaintiff's treatment providers recorded that she was able to complete the aforementioned tasks, implying "she will not need to take unscheduled breaks or have frequent absences from work due to her physical impairments." (R. at 91, 112, 119, 435–41, 442–45.)

Ultimately, the ALJ adequately accounted for Plaintiff's exertional and postural limitations in formulating Plaintiff's RFC and sufficiently explained his conclusions, citing to objective medical evidence from the record and Plaintiff's own testimony. Substantial evidence review does not permit the Court to reweigh the evidence. *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). Instead, the Court must uphold the ALJ's findings when, as here, the ALJ offers a sufficient explanation and substantial evidence supports the limitations endorsed by the ALJ. *Id.* Accordingly, the ALJ did not err.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment will be denied (ECF No. 14), Defendant's Motion for Summary Judgment will be granted (ECF No. 17), and the final decision of the Commissioner will be affirmed.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: May 26, 2020
Richmond, Virginia

23